# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VIPULA D. VALAMBHIA,<br>PRISCILLA D. VALAMBHIA,<br>BHAVNA D. VALAMBHIA,<br>PUNITA D. VALAMBHIA,<br>KRISHNAKANT D. VALAMBHIA,<br>11807 Westheimer Road #550-236<br>Houston, TX 77077,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED REPUBLIC OF TANZANIA,<br>P.O. Box 980<br>Dodoma, Tanzania<br><br>BANK OF TANZANIA,<br>2 Mirambo Street<br>11884 Dar es Salaam, Tanzania<br><br>MINISTRY OF DEFENCE &<br>NATIONAL SERVICE<br>Area D, Plot J, House Na 18&19<br>P.O. Box. 2924<br>Dodoma, Tanzania<br><br>　　　　Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | No. _____ |

## COMPLAINT

Plaintiffs Vipula D. Valambhia, Priscilla D. Valambhia, Bhavna D. Valambhia, Punita D.

Valambhia, and Krishnakant D. Valambhia ("Plaintiffs") bring this Complaint against

Defendants United Republic of Tanzania, the Bank of Tanzania, and the Ministry of Defence and

National Service, alleging as follows:

## NATURE OF THE PROCEEDING

1.      This is an action under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371, to recognize and enforce a foreign money judgment rendered in Tanzania against Defendants.

2.      Defendants purchased military equipment that they never fully paid for, despite repeated court rulings in Tanzania ordering them to do so.

3.      Defendants are not entitled to sovereign immunity because their purchases of military equipment are classic commercial activities for which sovereign immunity is waived under the Foreign Sovereign Immunities Act ("FSIA").

## PARTIES

4.      Plaintiffs are citizens of the United States who reside in Houston, Texas.

5.      Defendant United Republic of Tanzania ("Tanzania") is a foreign sovereign.

6.      Defendant Bank of Tanzania (the "Bank") is an agency or instrumentality of Defendant United Republic of Tanzania or, in the alternative, a political subdivision of the foreign sovereign state of Tanzania.

7.      Defendant Ministry of Defence and National Service (the "Ministry of Defence") is a political subdivision of the foreign sovereign state of Tanzania.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1330(a).

9.      Defendants are not immune from suit because this action is based upon an act outside the territory of the United States in connection with a commercial activity of the foreign

state elsewhere and that act causes a direct effect in the United States under the FSIA. 28 U.S.C. § 1605(a)(2).

10.     This Court has personal jurisdiction over Defendants under 28 U.S.C. § 1330(b) because Defendants are (a) a foreign sovereign, a political subdivision of a foreign sovereign, or an agency or instrumentality of a foreign sovereign, (b) they are not entitled to immunity, and (c) because they will be duly served as provided by the FSIA, 28 U.S.C. § 1608(a) or (b).

11.     Venue is proper in this district under 28 U.S.C. § 1391(f)(4).

## STATEMENT OF FACTS

### A.     The Underlying Dispute.

12.     This case arose from a contract to supply troop carriers, tanks, and other military equipment to Tanzania, entered into between Tanzania, acting through its Ministry of Defence, and the supplier, Transport Equipment Ltd. ("TEL"), a company incorporated under the laws of Ireland. Ex. A (Contract 4-25-85). TEL operated in Tanzania through its agent and Director General, Devram P. Valambhia ("Valambhia"). Valambhia, who is now deceased, was the husband of Plaintiff Vipula D. Valambhia, and the father of their four adult children, Plaintiffs Priscilla D. Valambhia, Bhavna D. Valambhia, Punita D. Valambhia, and Krishnakant D. Valambhia.

13.     TEL and Valambhia entered into an Irrevocable Agreement, dated January 4, 1989, which surrendered "irrevocably, unconditionally, unilaterally and without any dispute or claims, whether in the past, present or future to surrender fully a total percentage of 45% of the nett [sic] amount" received and/or due under the contract, which amounted to $50,610,495 in U.S. Dollars as of that date, "plus its arrears, interest, management fees, service charges,

surcharges, etc. (according to monthly statement), and to pay that amount to "Mr. D.P.

Valambhia and family." Ex. B (Irrevocable Agrmt.).

14.     Tanzania and its Ministry of Defence acknowledged the Irrevocable Agreement in

a contract dated June 10, 1989, and "accede[d] and under[took] to honour the [Irrevocable

Agreement], and pledged to  "take with immediate effect all necessary steps to pay directly to the

said D.P. Valambhia 45% of all payments due and payable under the aforementioned Contract."

Ex. C (Contract 6-10-89).

15.     The Bank also acknowledged receipt of the Irrevocable Agreement in a letter

dated May 19, 1989 to "D.P. Valambhia & Family," stating that it would "undertake[ ] to honour

the same accordingly." Ex. D (Ltr. 5-19-89).

16.     The Bank paid both TEL and Valambhia amounts due under the contract from

Tanzania's bank account between 1986 to 1989. Ex. E at 2 (Ct. of Appeal Ruling 3-27-02). A

dispute arose between TEL and Valambhia as to amounts owed to Valambhia under the contract,

however, and the Bank stopped making payments to Valambhia. *Id.*

17.     Tanzania, the Ministry of Defence, and the Bank sought to avoid paying

Valambhia in a notorious and highly publicized series of court proceedings in Tanzania spanning

over fourteen years, all of which they lost. It became known as the most expensive legal suit in

the country's history, costing taxpayers close to $20 million in legal fees for the government's

outside counsel, according to press reports. Ex. F (Guardian Article, 6-28-09).

18.     In the first of those proceedings, in the High Court of Tanzania, TEL sued

Valambhia, who counterclaimed against TEL for the amounts owed him. Ex. G at 1 (High Ct.

Ruling 2-12-91). The High Court of Tanzania dismissed TEL's suit for want of prosecution and

entered a decree (the "High Court Decree") on February 12, 1991, ordering "[t]hat *the defendant*

*[Valambhia] and his family* are netitled [sic] to be paid 45% of the proceeds of the money due and payable by the Government of the United Republic of Tanzania to [TEL] pursuant to the contract between the said Government and [TEL]," and that "the Government, acting through the Ministry of Defence and National Service and through Bank of Tanzania, shall pay the proceeds as at the 10th June, 1989, together with interest, arrears, Management fees, service charges surcharges etc. direct to *the defendant and his family* as per the said agreement." Ex. H (High Ct. Decree 2-12-91) (emphasis added); *see also* Ex. G at 5-6 (High Ct. Ruling 2-12-91) (explaining High Court's reasoning).

19.     After over 10 years of unsuccessful legal proceedings brought by TEL, Tanzania and its Ministry of Defence, and the Bank to challenge the High Court Decree, the High Court entered a garnishee order on June 4, 2001 (the "Garnishee Order"), ordering the Governor of the Bank of Tanzania in Dar es Salaam to immediately pay 55,099,171.66 USD "from Government Accounts operated by the Government of United Republic of Tanzania" at the Bank to the registrar of the court. Ex. I (Garnishee Order 6-4-01).

20.     The Bank challenged the validity of the Garnishee Order in the High Court, which held on January 21, 2002 that the Garnishee Order was properly issued and served, and "ought, therefore, to have been obeyed." Ex. J at 7 (High Ct. Ruling 1/21/02). The High Court held that the Bank was a proper garnishee because it was a third party in possession of the moneys due to the judgment debtor, TEL, which owed the money to Valambhia as the judgment creditor. *Id.* at 3-4, 6. The High Court ruled that the Bank shall pay the moneys due to Valambhia "until the whole decretal sum has been full paid" in U.S. Dollars. *Id.* at 7. The Bank then appealed this ruling to the Court of Appeal of Tanzania, which, on March 20, 2003, refused leave to appeal

and held that the Garnishee Order was final and conclusive and thus, the Bank did not have the right to appeal. Ex. K at 9-11 (Ct. of Appeal Ruling 3-20-03).

21.     This was not the end of the legal saga, however. As the Tanzanian High Court explained seven months after the Court of Appeal Ruling, "[a]ccording to [the Tanzanian] legal system, this decision should have marked the end of the saga . . . . [t]his was not so, as the Bank of Tanzania, did not oblige." Ex. L at 3 (High Ct. Ruling 10-1-03). After the Bank still refused to comply with the Garnishee Order, the High Court issued a show cause order for contempt against the Governor of the Bank. *Id.* In its ruling on October 1, 2003, the High Court rejected each of the Bank's arguments as to why it could not pay the amounts due to Valambhia and his family. *Id.* at 4-11. The High Court explained that "[t]he legality and propriety of the garnishee order has already been determined by this court (Chipeta, J.) in his ruling dated 21st January 2002 . . . . And this ruling was confirmed by the full bench of the Court of Appeal in Civil Reference No. 4 of 2002." *Id.* at 7; *see* Exs. J, K. The High Court held the Bank's Governor in contempt, ordering him to pay a fine or serve a term of imprisonment. Ex. L at 11.

22.     The Attorney General of Tanzania also belatedly filed an objection to the Garnishee Order in the High Court of Tanzania, which held on July 17, 2003 that the application was time barred and dismissed it. Ex. M at 7 (High Ct. Ruling 7-17-03).

23.     Despite the Tanzanian courts' consistent holdings that Valambhia and his family are entitled to $55 million plus interest as of June 4, 2001, Defendants never heeded the High Court Decree or the Garnishee Order (together, the "Tanzanian Judgment"), and never paid Valambhia or his family.

24.    Valambhia passed away in Dar es Salaam in 2005. Plaintiffs are his sole heirs. His family spent years attempting to enforce the judgments both in Tanzania and through U.S. diplomatic channels, to no avail.

**B.    The Bank's Role.**

25.    The Bank is a corporation created by the Bank of Tanzania Act of 1965, passed by the Tanzanian National Assembly in December 1965. Ex. N § 4.-(1) (BOT Act 2006). It is currently governed by the Bank of Tanzania Act of 2006, which provides that the Bank "shall . . . be capable of suing and being sued." *Id.* § 4.-(2)(b). The Act provides that "[i]n the pursuit of its objectives and performance of its tasks, the Bank shall be autonomous and accountable as provided for under this Act." *Id.* § 5.-(3).

26.    The Bank acts as the Central Bank for Tanzania, setting monetary policy for the country, maintaining domestic price stability, issuing currency, and serving as the banker and the fiscal agent for the Government. *See* Ex. O, *available at* http://www.bot.go.tz/AboutBOT/BOTFunction.asp (last visited Feb. 13, 2018); Ex. N § 5.-(1) (BOT Act 2006).

27.    The High Court of Tanzania held in the Valambhia proceedings that, under the prior Bank of Tanzania Act of 1995, the Bank was "charged to act as a fiscal agent of the Government" and it "constituted an agent of the Government by operation of law." Ex. M at 5 (High Ct. Ruling 7-17-03). The Bank of Tanzania Act of 2006 similarly provides that "[t]he Bank shall be the banker, and shall act as the fiscal agent of the Governments," which include Tanzania and the Revolutionary Government of Zanzibar. Ex. O §§ 31.-(1), 3 (BOT Act 2006). In that capacity, it may "effect payments for the account of the Governments or public authority." *Id.* § 32.-(1).

## COUNT ONE

## RECOGNITION AND ENFORCEMENT OF TANZANIAN JUDGMENT

28.     Plaintiffs reallege the allegations set forth in paragraphs 1-27 above as if fully set forth herein.

29.     The Tanzanian Judgment is a foreign money judgment entitled to recognition and enforcement under the Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code §§ 15-361 to 15-371.

30.     The Tanzanian Judgment grants recovery of a sum of money in the amount of $55,099,171.66 in U.S. Dollars, consisting of $32,411,277.76 in principal and $22,687,893.90 in interest accruing at a rate of 7 percent per annum as of June 4, 2001. *See* Ex. I at 1-2.

31.     The Tanzanian Judgment is final, conclusive, and enforceable against Defendants under the laws of Tanzania.

32.     The Tanzanian Judgment does not relate to taxes, fines or other penalties, divorce, support or maintenance, domestic relations, or any other matter outside the scope of the Uniform Foreign-Country Money Judgments Recognition Act.

33.     There are no grounds for refusing to recognize the Tanzanian Judgment, which was rendered by a judicial system with impartial tribunals and procedures compatible with the requirements of due process of law. The Tanzanian court had both personal jurisdiction and subject matter jurisdiction over Defendants.

34.     Defendants received timely notice of and actively participated in the Tanzanian proceedings, and unsuccessfully appealed the Tanzanian Judgment.

35.     The Tanzanian Judgment was not procured by fraud. Defendants had an adequate opportunity to present their case.

36.     Neither the Tanzanian Judgment nor the underlying cause of action on which the judgment is based is repugnant to the public policy of the District of Columbia or the United States. The Tanzanian Judgment does not conflict with any other final and conclusive judgment.

37.     There are no circumstances that raise any doubt about the integrity of the Tanzanian court in rendering the Tanzanian Judgment, and the proceedings were compatible with the requirements of due process of law.

38.     The High Court ordered that the Tanzanian Judgment be paid to Valambhia "and his family," as provided in the parties' contract. Plaintiffs are entitled to recover under the Tanzanian Judgment because they are named beneficiaries of the Tanzanian Judgment, or, in the alternative, because they are Valambhia's sole heirs.

39.     Accordingly, Plaintiffs are entitled to recognition and enforcement of the Tanzanian Judgment.

40.     Defendants are not entitled to sovereign immunity because the underlying contract to provide military equipment was a classic commercial activity for which sovereign immunity is waived under the FSIA. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614-15 (1992) (explaining that "a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods"). Defendants' failure to pay Plaintiffs the money owed to them under the Tanzanian Judgment had a direct effect in the United States on Valambhia's family, who moved to the United States in 1981 and became United States citizens in 2001. Defendants were well aware that the Valambhia family lived in the United States. Moreover, before they stopped paying him, the Ministry of Defence and the Bank of Tanzania paid Valambhia from the Ministry's Federal Reserve Bank of New York account.

41.    Plaintiffs seek to recover from Defendants the $55,099,171.66 ordered by the High Court to be paid as of June 4, 2001, plus interest accruing at 7 percent per annum since then, amounting to $64,500,750.87 as of February 19, 2018, for a total amount due of $119,599,922.53, with interest continuing to accrue thereafter until paid.

## PRAYER FOR RELIEF

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and against Defendants granting the following relief:

a.    recognition and enforcement of the Tanzanian Judgment;

b.    a money judgment for $55,099,171.66, plus costs and interest accruing at 7 percent per annum, in the amount of $64,500,750.87, for an amount exceeding $119,599,922.53, as of February 19, 2018, with interest continuing to accrue thereafter until paid;

c.    prejudgment and post-judgment interest;

d.    attorney's fees or costs that may be recoverable in this proceeding; and

e.    such other and further relief as may be just and proper.

Dated: February 19, 2018

Respectfully submitted,

*/s/Meredith B. Parenti*
Meredith B. Parenti
Texas Bar No. 00797202
PARENTI LAW PLLC
7500 San Felipe, Suite 600
P.O. Box 19152
Houston, TX 77224
Tel: (281) 224-5848
Fax: (281) 605-5677
meredith@parentilaw.com

*Attorney for Plaintiffs*