UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VIPULA D. VALAMBHIA, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED REPUBLIC OF TANZANIA, et al.**, <br><br> Defendants. | Civil Action No. 18-cv-370 (TSC) |

## MEMORANDUM OPINION

Plaintiffs Vipula D. Valambhia, Priscilla D. Valambhia, Bhavna D. Valambhia, Punita D. Valambhia, and Krishnakant D. Valambhia, bring this action under the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act, D.C. Code §§ 15-361 to 15-371, against Defendants United Republic of Tanzania, the Bank of Tanzania, and the Ministry of Defence and National Service, for recognition and enforcement of a foreign money judgment rendered in Tanzania against Defendants. Currently pending before the court is Defendants' Motion to Dismiss, ECF No. 13, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons explained below, the court will **GRANT** Defendants' motion. Because the court finds that it does not have subject matter jurisdiction, it need not reach Defendants' Rule 12(b)(6) argument.

I.    BACKGROUND

In 1985, the Tanzanian Ministry of Defence, on behalf of Tanzania, ordered troop carriers, tanks, and other military equipment as part of a contract with Transport Equipment Ltd. ("TEL"), an Irish corporation. Plaintiffs' First Amended Complaint ¶ 12, ECF No. 12 ("Am. Compl."). The Plaintiffs' decedent, Devram Valambhia ("Valambhia"), was the Director General of TEL. *Id.* Valambhia's family has lived in the United States since 1981. *Id.*

Tanzania paid the amounts due under the military equipment contract through the Bank of Tanzania ("the Bank") from 1986 to 1989. *Id.* ¶ 13. After some dispute, TEL and Valambhia entered into an Irrevocable Agreement on January 4, 1989, stating that Valambhia should receive 45% of the total amount due under the contract. *Id.* ¶¶ 13–14. On June 10, 1989, Tanzania signed a new contract acknowledging the Irrevocable Agreement between TEL and Valambhia and pledging to pay Valambhia in U.S. dollars the amount due to him under the initial contract. *Id.* ¶ 15. Tanzania began to make payments to Valambhia from its Federal Reserve Bank of New York account in the United States. *Id.*

Tanzania then tried to challenge the validity of these agreements through a long, highly-publicized series of court cases that lasted over fourteen years. *See id.* ¶¶ 17–23; Decl. of Meredith B. Parenti, Ex. F, ECF No. 12-1, Richard Mgamba, "Revealed: The most expensive legal suit in Dar's history," THE GUARDIAN, June 28, 2009, at 1–2. In 1991, the High Court of Tanzania entered a High Court Decree which stated that Valambhia and his family were entitled to 45% of the amount unpaid on the contract between Tanzania and TEL. Am. Compl. ¶ 18. In 2001, after roughly a decade of further litigation, the High Court of Tanzania entered a Garnishee Order that required the Bank of Tanzania to pay Valambhia the amount owed under the High Court Decree. *Id.* ¶ 19. The Bank challenged the validity of the Garnishee Order, but

the High Court found it to be proper. *Id.* ¶ 20. The Bank then appealed this ruling in the Court of Appeal of Tanzania, the country's highest court. *Id.* ¶ 20. In 2003, the Court of Appeal held that the Garnishee Order was "final and conclusive" and denied the Bank any right to appeal. *Id.*

Nonetheless, the Bank continued to refuse to comply with the Garnishee Order, and the High Court issued against the Bank of Tanzania an order to show cause why it should not be held in contempt. *Id.* ¶ 21. After rejecting the Bank's argument regarding its inability to pay the amounts due to Valambhia and his family, the High Court held the Bank's Governor in contempt and ordered him to pay a fine or serve a term of imprisonment. *Id.* Valambhia died in Tanzania in 2005, *id.* ¶ 24, and the Bank has never paid his family, *id.* ¶ 23.

The Valambhia family, Devram Valambhia's sole heirs, now files this suit under the D.C. Uniform Foreign-Country Money Judgments Recognition Act, D.C. Code §§ 15-361 to 15-371, to recognize and enforce the foreign money judgment rendered in Tanzania. *Id.* ¶ 1.

## II. LEGAL STANDARD FOR RULE 12(B)(1)

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists." *Georgiades v. Martin–Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984) (citation omitted). The court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine[s] jurisdictional questions." *American National Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotations marks and citations omitted). A court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted).

## III. ANALYSIS

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA") "entitles foreign states to immunity from the jurisdiction of courts in the United States, subject to certain enumerated exceptions." *Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993) (citations omitted). The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Id.* at 355. "Courts may hear a case only if one of the [FSIA] exceptions applies because subject-matter jurisdiction in any such action depends on that application." *Simon v. Republic of Hungary*, 911 F.3d 1172, 1177 (D.C. Cir. 2018) (quotation marks and citations omitted).

Plaintiffs concede that Defendants are foreign sovereigns. Am. Compl. ¶¶ 5-7. Therefore, to establish this court's subject matter jurisdiction over Defendants, Plaintiffs must demonstrate that one of the FSIA exceptions to immunity applies. Relevant to this case is the so-called "commercial activities exception." *See* 28 U.S.C. §1605(a)(2).[1] As the D.C. Circuit has noted, the commercial activities exception has three operative clauses:

> [T]he commercial activity exception . . . permits a suit when "the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an

---

[1] The commercial-activities exception states:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —
>
> …
>
> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. §1605(a)(2).

act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

*Odhiambo v. Republic of Kenya*, 764 F.3d 31, 34 (D.C. Cir. 2014) (quoting 28 U.S.C. § 1605(a)(2) (alterations in original)); *see also OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 394 n.1 (2015) ("Section 1605(a)(2) contains three separate clauses.").

Plaintiffs contend that this court has jurisdiction pursuant to the second and third clauses of the commercial activities exception. Am. Compl. ¶ 9.[2] Both clauses require that an action be "based upon" an act in connection with a commercial activity of the foreign state.

In *Saudi Arabia v. Nelson*, an American doctor brought a tort action against Saudi Arabia under the first clause of the commercial-activities exception. *Nelson*, 507 U.S. at 353-54. The Supreme Court held that the phrase "based upon" in the first clause means "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Id.* at 357 (citations omitted). Therefore, Nelson's action was not "based upon . . . a commercial activity carried on in the United States" because the tort actions which formed Nelson's cause of action occurred in Saudi Arabia, not the United States. *Id.* at 358. *See OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) ("[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit.").

In *Odhiambo,* the D.C. Circuit held that *Nelson*'s definition of "based upon" in the first clause applies to the second clause as well. 764 F.3d at 37-38. The Court explained that "the virtually identical statutory text and structure of clauses one and two lead us to conclude that

---

[2] The parties agree that the first clause of the commercial activities exception does not apply to this case. *See* Mem. Supp. Defs.' Mot. to Dismiss at 4, ECF No. 13-1; Pls.' Mem. Opp'n. Mot. to Dismiss at 7, ECF No. 15.

'based upon' means the same thing in both clauses." *Id.* at 37 (citations omitted). Accordingly, the Court held that "a suit against a foreign sovereign may proceed under clause two only if the 'act performed in the United States in connection with a commercial activity of the foreign state elsewhere' establishes a fact without which the plaintiff will lose." *Id.* at 38 (quoting *Nelson*, 507 U.S. at 357).

The parties agree that the definition of "based upon" is the same in all three clauses of commercial activities exception. *See* Pls.' Mem. Opp'n. Mot. to Dismiss at 14, ECF No. 15; Reply Mem. Supp. Defs.' Mot. to Dismiss at 3 n.1, ECF No. 17. In *Odhiambo*, the D.C. Circuit concluded that Odhiambo's action under the third clause was "based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere," because in Odhiambo's suit for breach of contract, the breach was a commercial activity of the foreign government and constituted a fact without which Odhiambo would lose. 764 F.3d at 38.

The question in this case is whether a court, in determining if a claim for recognition of a foreign judgment is "based upon" an act performed in connection with a commercial activity, may consider the underlying commercial conduct that gave rise to the foreign judgment. *Odhiambo* and *Nelson* compel the conclusion that the answer is no. The elements of a claim for the recognition of a foreign judgment are: 1) the foreign court had personal and subject matter jurisdiction over the defendant and underlying subject matter; 2) the foreign court had sufficient due process safeguards; and 3) a fully enforceable judgment exists in the foreign country. *See* D.C. Code §§ 15-363(a), 15-364(b). Therefore, any underlying commercial conduct alleged in Plaintiffs' Complaint is not an "element[] of a claim" for recognition of a foreign judgment,

*Nelson*, 507 U.S. at 357, or "a fact without which the plaintiff will lose," *Odhiambo*, 764 F.3d at 38.

Plaintiffs contend that this court should follow guidance from an unpublished Second Circuit decision, which states that "[i]n applying the commercial activity exception to an action for recognition of a foreign judgment, we look to the underlying conduct that gave rise to the judgment." *SerVaas Inc. v. Republic of Iraq*, 653 Fed. App'x 22, 23-24 (2d Cir. 2011) (citation omitted). However, *SerVaas* relied on a prior Second Circuit case, *International Housing Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8 (2d Cir.1989), which was decided before the Supreme Court's decision in *Nelson*. In fact, the Second Circuit has acknowledged that *SerVaas* "is in some tension with a literal reading of the definition of 'based upon' used by the Supreme Court in *Nelson*." *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 389 n.4 (2d Cir. 2000).

This court recognizes that its literal application of the meaning of "based upon" from *Odhiambo* and *Nelson*, neither of which involved an action to enforce a judgment, effectively makes a dead letter of an action to recognize a foreign court judgment brought against a foreign sovereign under the commercial activities exception to the FSIA.[3] Nonetheless, a faithful interpretation of *Odhiambo* and *Nelson* requires this court to dismiss the complaint for lack of subject matter jurisdiction.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 13, is **GRANTED**.

---

[3] A foreign state may waive its immunity. *See* 28 U.S.C. § 1605(a)(1).

A corresponding Order will issue separately.

Date: March 31, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge